A08A1828. THE STATE v. FISHER et al.
(666 SE2d 594)

BLACKBURN, Presiding Judge.

After Demarcus Fisher and D'Tori Crawford successfully moved the trial court to suppress contraband found in searches resulting from their arrests, the State appeals the order granting suppression, arguing that police were only briefly detaining Fisher and Crawford based on reasonable suspicion and that during that detention, some drugs were discovered in plain view. The State maintains that this discovery then led to the men's arrests and to the discovery of more drugs pursuant to searches incident to their arrests. Because evidence supported the trial court's finding that both defendants were arrested without probable cause and that the drugs were found pursuant to searches incident to those arrests, we affirm.

When reviewing a trial court's ruling on a motion to suppress, we apply the "any evidence" standard, which means that we sustain

all of the trial court's findings of fact that are supported by any evidence. "We construe all evidence presented in favor of the trial court's findings and judgment." (Punctuation omitted.) *Fleming v. State*.[1] See *Tate v. State*.[2]

So construed, the evidence shows that at approximately 1:00 a.m. on June 30, 2007, an officer in his marked patrol car drove onto the premises of a 24-hour gas and convenience store and noticed Crawford standing near the passenger door of a vehicle in the parking lot to the side of the store. As the officer drove toward the vehicle, Crawford saw him and began to walk away, soon breaking into a run. Remaining in his vehicle, the officer chased Crawford, overtaking him within a few minutes and handcuffing and arresting him for obstruction.

With Crawford secured in the back of his patrol car, the officer returned to the convenience store parking lot and, accompanied by some backup officers, approached the vehicle, in which Fisher was sitting in the driver's seat. The officer asked Fisher what he was doing, to which Fisher replied that he was waiting on someone. The officer then asked him who the vehicle's owner was; Fisher responded that he did not know. When Crawford also stated that he did not know the vehicle's owner, the officer removed Fisher from the vehicle and locked him in the back of another patrol vehicle, apparently also in handcuffs. The officer ran the tag from the vehicle, which did not come back as stolen. The officer then searched the vehicle, finding a bag of suspected cocaine on the seat and handguns and additional drugs in the trunk. While searching Crawford's person, police discovered the keys to the vehicle.

Charged with various drug- and firearm-related crimes, Fisher and Crawford moved to suppress the evidence found in the vehicle. Following an evidentiary hearing, the court found that the two men had been unlawfully arrested and the evidence unlawfully seized, resulting in the court's granting the motion to suppress.

"The State bears the burden of proving that both the search and seizure of evidence were lawful." (Punctuation omitted.) *Lucas v. State*.[3] Here, the court found the State did not carry its burden, concluding that under the evidence presented, both men were illegally arrested without probable cause before police discovered any incriminating drugs or firearms in the vehicle. The State maintains on appeal that police were only conducting a valid investigatory stop on the men, during which investigation cocaine was seen in plain

---

[1] *Fleming v. State*, 282 Ga. App. 373, 374 (638 SE2d 769) (2006).
[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).
[3] *Lucas v. State*, 284 Ga. App. 450, 451 (644 SE2d 302) (2007).

view on the vehicle's seats; only then were the men arrested and the vehicle searched as an inventory search prior to impounding the vehicle.

These are disputed factual issues that the trial court resolved against the State. See *Tate*, supra, 264 Ga. at 54 (1). "Georgia recognizes three tiers of police-citizen encounters: consensual encounters; brief investigatory stops that require reasonable suspicion; and arrests that require probable cause." *State v. Devine*.[4] As stated in *State v. Norris*,[5] it is a mixed question of fact and law as to which type of encounter is occurring:

> The test for determining whether a person has been placed under custodial arrest is whether the individual was formally arrested or restrained to a degree associated with a formal arrest, not whether the police had probable cause to arrest. The test is whether a reasonable person in the suspect's position would have thought the detention would not be temporary. A trial court deciding whether to admit evidence must apply this objective test; it is the reasonable belief of an ordinary person under such circumstances, and not the subjective belief or intent of the officer, that determines whether an arrest has been effected. The issue is a mixed question of law and fact. Therefore, to the extent that determination of the issue hinges on resolution of factual questions, we construe the evidence most favorably to uphold the trial court's findings and accept those findings unless they are clearly erroneous; but we independently apply the legal principles to those facts.

(Punctuation and footnotes omitted.) See *Satterfield v. State*[6] (the facts to determine the level of the encounter with police are for the trial court to resolve).

As to Crawford, the officer testified:

> Q. [W]hen you eventually caught up with him, you handcuffed him, did you not?
> A. Yes, Ma'am.
> Q. And he was not free to leave?
> A. No, Ma'am.
> Q. And you had not charged him with any crime at that point, had you?

---

[4] *State v. Devine*, 276 Ga. App. 159, 160 (622 SE2d 854) (2005).

[5] *State v. Norris*, 281 Ga. App. 193, 195-196 (635 SE2d 810) (2006).

[6] *Satterfield v. State*, 289 Ga. App. 886, 888 (1) (658 SE2d 379) (2008).

A. Besides obstruction.

Q. . . . What's the obstruction?

A. . . . Running from law enforcement.

Thus, when the officer handcuffed Crawford and placed him in the patrol car, he believed he was arresting Crawford for obstruction. And from the perspective of Crawford, being handcuffed and placed in the back of a patrol car under these circumstances would cause a reasonable person to believe he was being arrested. See *Norris*, supra, 281 Ga. App. at 196.

With regard to Fisher, the officer testified that he forcibly removed Fisher from the vehicle in which he was sitting and secured him in the back of another patrol car; the understandable inference argued by Fisher's counsel and uncontested by the State was that he was similarly handcuffed. Thus, evidence supported the trial court's finding that both men were arrested at this point. Further, the officer gave equivocal testimony supporting a finding that the cocaine allegedly seen in "plain view" on the vehicle's seat was not viewed until after both arrests had been effectuated and until after the officer had confirmed that the vehicle was not stolen, and was found as part of the inventory search of the vehicle incident to the arrests.

Because police arrested both men prior to finding the drugs and other evidence in the vehicle, the various cases cited by the State as to whether police had reasonable suspicion to conduct a second-tier investigatory stop are simply inapplicable. The question is whether police had probable cause to arrest the men.

As to Crawford, the officer conceded in his testimony that the only basis for arresting Crawford was that his running from the officer constituted obstruction. Yet the officer testified that at no point prior to this arrest had he ordered Crawford to stop; thus, Crawford was at most simply running from a first-tier encounter. *State v. Dukes*[7] expressly held that merely running from a first-tier encounter does not, as a matter of law or fact, constitute obstruction of an officer and thus can provide police no probable cause to arrest the person. See *Black v. State*[8] ("a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Even running from police during a first-tier encounter is wholly permissible. [Defendant's] exercise of his right to avoid the police gave the police no grounds to grab him nor to arrest him for obstruction of justice") (citations and punctuation omitted). "Be-

---

[7] *State v. Dukes*, 279 Ga. App. 247, 251 (630 SE2d 847) (2006).

[8] *Black v. State*, 281 Ga. App. 40, 44 (1) (635 SE2d 568) (2006).

cause the officers arrested [Crawford] without probable cause, the evidence discovered as a result of that unlawful arrest must be suppressed." *Dukes*, supra, 279 Ga. App. at 251. See *Black*, supra, 281 Ga. App. at 48 (1).

As to Fisher, the officer arrested Fisher for sitting in a car, the owner of which he could not identify. Yet the officer had no report of a stolen vehicle, nor was there any evidence that the vehicle had been broken into, nor was there any report of any illegal activity occurring in the parking lot. Even the officer's claim that this general area of the city had a high rate of car break-ins and thefts was not specific to this particular convenience store or parking lot. See *Smith v. State*.[9] Setting aside whether police had reasonable suspicion for a brief detention, see *Thompson v. State*,[10] we hold that at this point the officer had no probable cause to remove Fisher from the vehicle and to arrest him. The evidence consequently discovered in the vehicle was therefore illegally obtained and properly suppressed. See *Dukes*, supra, 279 Ga. App. at 251.

Accordingly, as evidence supported the trial court's findings that the two men were illegally arrested, the court properly suppressed the evidence obtained from the vehicle as a result of the arrests.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED AUGUST 4, 2008.

*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellant.

*Mau & Kondritzer, Kenneth D. Kondritzer, Lawanda J. O'Bannon, Carl P. Greenberg*, for appellees.

---

[9] *Smith v. State*, 245 Ga. App. 613, 618 (538 SE2d 517) (2000).
[10] *Thompson v. State*, 230 Ga. App. 131, 132 (495 SE2d 607) (1998).